# UNITED STATES COURT OF APPEALS
# FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| **VENUS BLACKSHEAR** | **:** | **CASE NO. 10-3696** |
| | **:** | |
| **Plaintiff-Appellant** | **:** | |
| | **:** | |
| **vs.** | **:** | |
| | **:** | |
| **INTERSTATE BRANDS CORP.** | **:** | |
| | **:** | |
| **Defendants-Appellee** | **:** | |
| | **:** | |

## APPELLEE BRIEF OF INTERSTATE BRANDS CORPORATION

David A. Campbell  (0066494)
VORYS, SATER, SEYMOUR AND
PEASE LLP
52 East Gay Street
P.O. Box 1008
Columbus, Ohio  43216-1008
Telephone:  (614) 464-6400
Facsimile:  (614) 464-6350
E-mail: dacampbell@vorys.com


*Attorney for Appellee*
*Interstate Brands Corp.*

Daniel J. Clark  (0075125)
VORYS, SATER, SEYMOUR AND
PEASE LLP
52 East Gay Street
P.O. Box 1008
Columbus, Ohio  43216-1008
Telephone:  (614) 464-6400
Facsimile:  (614) 464-6350
Email:  djclark@vorys.com


*Attorney for Appellee*
*Interstate Brands Corp.*

# <u>TABLE OF CONTENTS</u>

<u>**PAGE**</u>

TABLE OF AUTHORITIES .................................................................... iii

CORPORATE DISCLOSURE STATEMENT ........................................5

STATEMENT OF THE CASE...............................................................6

STATEMENT OF FACTS ...................................................................10

    <u>I.</u>     PROCEDURAL HISTORY ...............................................10

    II.    BLACKSHEAR'S EMPLOYMENT WITH IBC...............10

    III.   BLACKSHEAR ASSERTED NUMEROUS COMPLAINTS
          DURING HER EMPLOYMENT.......................................12

    IV.   BLACKSHEAR VIOLATED IBC'S WORKPLACE VIOLENCE
          POLICY BY THREATENING DEIDRE MANNING ......................13

    V.    IBC'S HONEST BELIEF THAT BLACKSHEAR VIOLATED THE
          WORKPLACE VIOLENCE POLICY STEMS FROM ITS FAIR
          AND IMPARTIAL INVESTIGATION INTO THE
          BLACKSHEAR/MANNING INCIDENT.........................14

LEGAL ARGUMENT.........................................................................19

    I.    THE DISTRICT COURT DID NOT ERR BY NOT APPLYING THE
          MIXED-MOTIVE STANDARD BECAUSE BLACKSHEAR
          FAILED TO PROVIDE PROPER NOTICE THAT HER CASE WAS
          A MIXED-MOTIVE CASE...............................................19

    II.    THE DISTRICT COURT PROPERLY GRANTED SUMMARY
          JUDGMENT TO IBC ON BLACKSHEAR'S TITLE VII AND
          O.R.C. § 4112 CLAIMS....................................................20

          A.    The District Court Correctly Held That Blackshear's Sexual
                 Harassment Claim Fails Because She Has Not Alleged That
                 She Was Harassed Based on Her Gender. ................................20

          B.    The District Court Properly Denied Blackshear's
                 Discrimination Claims Because Blackshear Cannot Prove a

i

<u>Prima Facie Case of Discrimination Because She Has No Evidence Regarding IBC's Treatment of Similarly-Situated Employees Outside Her Class</u>.................................................23

C.    <u>Blackshear's Gender and Race Retaliation Claims Fail Because She Cannot Show a Causal Connection Between the Exercise of Her Statutorily-Protected Rights and her Termination.</u>............26

D.    <u>The District Court Properly Dismissed Blackshear's Discrimination and Retaliation Claims Because She Failed to Enter Evidence of Pretext Sufficient to Overcome IBC's Legitimate, Non-Discriminatory/Retaliatory Reason for Her Termination.</u>...............................................................................28

E.    <u>The District Court Correctly Disregarded the OCRC Probable Cause Determinations.</u> ..............................................32

III.    <u>THE DISTRICT COURT PROPERLY GRANTED SUMMARY JUDGMENT ON BLACKSHEAR'S INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS CLAIM</u>.............................................34

**<u>CONCLUSION</u>**....................................................................................37

ADDENDUM .......................................................................................39

# TABLE OF AUTHORITIES

**PAGE**

## Cases

*Barnett v. Dep't of Veterans Affairs*, 153 F.3d 338 (6th Cir. 1998) ........................23

*Blakann v. Roadway Exp., Inc.* (6th Cir. 2005), 159 Fed. App'x 704 ....................30

*Braithwaite v. Timken Co.*, 258 F.3d 488 (6th Cir. 2001) ...................................9, 31

*Brewer v. Cleveland City Schools*, 122 Ohio App.3d 378 (Ohio Ct. App. 1997) ...36

*Clay v. UPS*, 501 F.3d 695 (6th Cir. 2007)............................................................31

*Clayton v. Meijer*, Inc., 281 F.3d 605, 611 (6th Cir. 2002) .....................................25

*Compare Cooper v. City of North Olmstead*, 795 F.2d 1265 (6th Cir. 1986).........28

*Crawford v. ITT Consumer Fin. Corp.*, 653 F.Supp. 1184, 1192 (S.D. Ohio 1986) ............................................................................................................36

*Diamond v. U.S. Postal Serv.*, 29 Fed. App'x 207, 212 n. 5 (6th Cir. 2002) ......8, 23

*Dixon v. Gonzales*, 481 F.3d 324 (6th Cir. 2007)...................................................28

*E.E.O.C. v. Ford Motor Co.*, 989 F.3d 1341 (Table) (6th Cir. 1996) ....................33

*Falconer v. Papco, Inc.*, No. 06-247 Erie, 2008 U.S. Dist. LEXIS 46840, at *4-5 (W.D. Pa. June 17, 2008) ....................................................................................23

*Fuelling v. New Vision Med. Labs., LLC,* 284 Fed. App'x 247 (6th Cir. 2008) ... 10, 36, 37

*Gallagher v. C.H. Worldwide, Inc.*, 567 F.3d 263 (6th Cir. 2009).....................8, 22

*Gribcheck v. Runyon*, 245 F.3d 547 (6th Cir. 2001)...............................................29

*Hashem-Younes v. Danou Enters., Inc.*, 311 Fed.App'x 777 (6th Cir. 2009).........20

*Hedrick v. W. Reserve Care Sys.*, 355 F.3d 444 (6th Cir. 2004) ............................30

*Jackson v. RKO Bottlers of Toledo, Inc.*, 743 F.2d 370 (6th Cir. 1984) ................27

*Johnson v. Interstate Brands Corp.*, 351 Fed. App'x. 36 (6th Cir. 2009)...............26

*Koval v. Dow Jones & Co.*, 86 F. App'x 61 (6th Cir. 2004) ...................................21

*Ladd v. Grand Trunk Western R.R.*, 552 F.3d 495 (6th Cir. 2008) ....................8, 25

*Lindsay v. Yates*, 578 F.3d 407 (6th Cir. 2009) .......................................................27

*Manzer v. Diamond Shamrock Chemicals Co.* (6th Cir. 1994), 29 F.3d 1078........30

*McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973) ..................... 20, 29

*Mowery v. City of Columbus*, No. 05AP-266, 2006 WL 620902, at *14 (Ohio Ct. App. 2006) ...........................................................................................................36

*Oncale v. Sundower Offshore Servs., Inc.*, 523 U.S. 75, 118 S. Ct. 998 (1998) .....23

*Sutherland v. Mich. Dep't of Treasury*, 344 F.3d 603 (6th Cir. 2003) ...................30

*Tenney v. General Elec. Co.*, No. 2001-T-0035, 2002 WL 1305990, *3 (Ohio Ct. App. June 14, 2002) ................................................................................................22

*Upshaw v. Ford Motor Co.*, 576 F. 3d 576 (6th Cir. 2009)....................................31

*Vickers v. Fairfield Med. Ctr.*, 453 F.3d 757 (6th Cir. 2006)..................................21

*Williams v. PVACC, LLC*, No. 09-3168, 2010 U.S. App. LEXIS 5461, at *11-13 (6th Cir. March 15, 2010)......................................................................................25

*Wright v. Murray Guard, Inc.*, 455 F.3d 702 (6th Cir. 2006) .......................... 24, 25

*Yeager v. Local Union 20*, 6 Ohio St.3d 369, 374-75, 453 N.E.2d 666 (1983) ......36

## **Statutes**

Ohio Revised Code 4112 and Title VII .................................................................11

## **Rules**

Sixth Circuit Rule 26.1 ...........................................................................................6

## <u>CORPORATE DISCLOSURE STATEMENT</u>

Pursuant to Sixth Circuit Rule 26.1, Interstate Brands Corp. makes the following disclosures:

1.    Interstate Brands Corp. is not a subsidiary of a publicly-owned corporation.

2.    Interstate Brands Corp. is not a publicly-traded company.

*<u>/s/David A. Campbell</u>*
*Counsel for Appellee*

## STATEMENT OF THE CASE

Appellee Venus Blackshear ("Blackshear") is a former employee of Interstate Brands Corporation ("IBC"). Blackshear was employed at IBC's Columbus, Ohio bakery as a Sanitor until her termination for violating IBC's Workplace Violence Policy in March 2008.

In March 2008, a 25-year employee and supervisor for IBC witnessed Blackshear threaten her co-worker. The supervisor witnessed Blackshear aggressively move toward a co-worker while stating, "I will knock you the fuck out." After the supervisor reported her threat, IBC's Human Resources Manager conducted a thorough and impartial investigation into the incident, interviewing all involved parties, and determined that Blackshear violated IBC's Workplace Violence Policy and should be terminated. IBC's Regional Human Resources Director reviewed these findings and agreed that Blackshear should be discharged.

Blackshear later instituted the underlying suit, alleging claims of sexual harassment, discrimination and retaliation based on gender, FMLA retaliation, and intentional infliction of emotional distress. After the District Court granted summary judgment to IBC on all of Blackshear's claims, she appealed everything but the dismissal of her FMLA claim to this Court. As demonstrated more thoroughly below, Blackshear's arguments are meritless, and this Court should affirm the District Court's grant of summary judgment.

First, Blackshear cannot state an actionable claim of sexual harassment because her claim is not based on her gender. Rather, Blackshear's claim is based on her allegation that she was harassed by her supervisor, Rebecca Keller, because Keller was jealous of Blackshear's romantic relationship with a co-worker. Therefore, her claim is based on Keller's personal animus toward Blackshear, not Blackshear's sex, and it is therefore not actionable. *See Gallagher v. C.H. Worldwide, Inc.*, 567 F.3d 263, 270 (6th Cir. 2009) (sexual harassment claims must be based on the plaintiff's sex) and *Diamond v. U.S. Postal Serv.*, 29 Fed. App'x 207, 212 n. 5 (6th Cir. 2002) (no discrimination where claims were based on personal animus).

Second, Blackshear also cannot make *prima facie* showings of discrimination and retaliation, and those claims fail. Specifically, Blackshear cannot prove that any similarly-situated employees outside her protected class were treated more favorably than her. In her brief, Blackshear states that the co-worker she threatened is a similarly-situated employee outside of her protected class. Her argument fails, however, because this co-worker was not determined by IBC to have violated the Workplace Violence Policy and she therefore is not similarly situated to Blackshear. *Ladd v. Grand Trunk Western R.R.*, 552 F.3d 495, 503 (6th Cir. 2008) (employees are not similarly situated where they have not violated a comparable rule). Blackshear has no other evidence that similarly-

situated IBC employees who violated the Workplace Violence Policy were not terminated. In contrast, IBC's Regional Human Resources Director testified that every individual found to have violated that policy has been terminated. Thus, the District Court's grant of summary judgment to IBC on Blackshear's discrimination and retaliation claims was proper.

Third, Blackshear's discrimination and retaliation claims also fail because she cannot not prove that IBC's legitimate, non-discrimination/retaliatory reason for her termination was pretextual. Blackshear argues in her brief that she can prove pretext by showing that she did not violate the Workplace Violence Policy. This argument fails because IBC honestly believed that she violated its policy based on its impartial investigation. And, in the Sixth Circuit, when an employer honestly believes that an employee violated a work rule, regardless of whether the employer's reasons are correct, the employee may only prove pretext by showing that the employer did not honestly believe the same. *Braithwaite v. Timken Co.*, 258 F.3d 488, 493-94 (6th Cir. 2001). Because Blackshear has no evidence proving that IBC did not honestly believe that she violated its policy, she cannot prove pretext and her discrimination and retaliation claims fail.

As to her intentional infliction of emotional distress claim, Blackshear has offered no evidence of outrageous conduct that could establish a claim of intentional infliction of emotional distress. And, even if IBC unlawfully

terminated her, a mere violation of anti-discrimination laws, on its own, is insufficient to support her intentional infliction of emotional distress claim. *Fuelling v. New Vision Med. Labs., LLC,* 284 Fed. App'x 247, 261 (6th Cir. 2008). This claim was thus properly dismissed by the District Court.

Accordingly, because the District Court properly dismissed her claims, this Court should affirm the District Court's holding.

## STATEMENT OF FACTS

## I.     PROCEDURAL HISTORY

Following her March 2008 termination from IBC, Blackshear filed her underlying Complaint on December 18, 2008.  (R. 3, complaint.)  The Complaint alleged causes of action for: (1) "gender, sex, and/or sexual orientation . . . harassment, discrimination, and retaliation [in violation of] Ohio Revised Code 4112 and Title VII;" (2) "disparate treatment discrimination, harassment and retaliation due to race [in violation of] Ohio Revised Code 4112 and Title VII;" (3) retaliation in violation of the FMLA; and (4) intentional infliction of emotional distress.  (*Id.* at ¶¶ 36-39.)

IBC later removed the action to the United States District Court for the Southern District of Ohio, Eastern Division, on January 6, 2009.  (R. 2, notice of removal.)  After discovery, IBC moved for summary judgment on January 8, 2010.  (R. 11, defendant's msj.)  The District Court granted IBC's motion for summary judgment on May 21, 2010.  (R. 20, order.)  This appeal followed.  (R. 24, notice of appeal.)

## II.    BLACKSHEAR'S EMPLOYMENT WITH IBC

Blackshear was employed with IBC from April 2004 until her termination for violation of IBC's Workplace Violence Policy on or about March 13, 2008.  (R. 12-1, plaintiff's deposition, p. 27.)    During her tenure, Blackshear was

employed at IBC's Columbus Bakery, which produced bread products under the "Wonder Bread" name. (*Id.* at Ex. 7, p. 1; R. 12-3, arbitration trans., p. 20.) At the time of her termination, Blackshear was employed as a Sanitor. (R. 12-1, plaintiff's deposition, p. 31, 33.) As a Sanitor, Blackshear's job duties included maintenance and cleaning of the equipment and machinery used at the Columbus Bakery. (*Id.* at 34.) Blackshear's direct supervisor was Rebecca Keller. (*Id.* at 40-41.)

While employed with IBC, Blackshear was a Union member with rights governed by the collective bargaining agreement (the "CBA") between IBC and the Bakery, Confectionery, Tobacco Workers and Grain Millers International Union, Local Union No. 57 (the "Union"). (*Id.* at Ex. 3.) Blackshear was subject to IBC's policies and procedures at the Columbus Bakery, including IBC's Workplace Violence Policy. (*Id.* at Ex. 2.) IBC's Workplace Violence Policy states, in pertinent part:

> Violence, threats, harassment, intimidation, and other disruptive behavior in our workplace will not be tolerated: that is, all reports of incidents will be taken seriously and will be dealt with appropriately. Such behavior can include oral or written statement[s], gestures, or expressions that communicate a direct or indirect threat of physical harm. Individuals who commit such acts may be removed from the premises and may be subject to disciplinary action, criminal penalties, or both. *** Any employee found in violation of this policy will be subject to immediate termination of employment.

(*Id.* at Ex. 2.)

11

Blackshear worked at the Columbus Bakery with her domestic partner, Deidre Manning, a Caucasian female. (*Id.* at 35, 34, 53.) Manning was also a Sanitor. (*Id.* at 34.)

## III.  BLACKSHEAR ASSERTED NUMEROUS COMPLAINTS DURING HER EMPLOYMENT.

Beginning as early as June 19, 2006, Blackshear began complaining regarding what she perceived as unfair or discriminatory treatment at IBC. (R. 3, complaint, ¶ 6.) Throughout her employment, Blackshear filed: (1) over five Union grievances; (2) approximately five charges with the Ohio Civil Rights and Equal Employment Opportunity Commissions; and (3) multiple internal complaints to IBC's human resources department. (R. 12-1, plaintiff's deposition, pp. 42, 55, 56; R. 3, complaint, ¶¶ 6, 7, 12, 13, 16, 18, 19, 20, 22-25, 29, 32, 33.)

Most of Blackshear's complaints address her supervisor, Rebecca Keller. (R. 12-1, plaintiff's dep., pp. 50, 55.) Specifically, Blackshear claims that Keller made romantic advances toward Manning, Blackshear's domestic partner, by asking Manning on dates and inviting Manning to visit her home. (*Id.* at 54.) Manning did not accept Keller's advances and told Keller that she was involved with Blackshear. (*Id.* at 54, 55.) Blackshear's claim in this case is that, once Keller learned of her involvement with Manning, Keller began "writing [her] up" and "trying to get [her] fired," i.e., "anything she could do to take [Blackshear] to the edge" by doing "everything she could get away with . . . ." (*Id.* at 55.)

## IV.  BLACKSHEAR VIOLATED IBC'S WORKPLACE VIOLENCE POLICY BY THREATENING DEIDRE MANNING.

Blackshear's violation of IBC's Workplace Violence Policy was witnessed by Bruce Rainey – a supervisory employee.  (R. 12-3, arbitration trans., Co. Ex. 1.) At the time, Rainey was a twenty-five-year IBC employee.  (*Id.* at p. 20.)  Rainey did not directly supervise Blackshear, and she had no prior race-or-gender-discrimination-related problems with Rainey.  (*Id.* at pp. 20-21; R. 12-1, plaintiff's dep., 65-66.)

On January 24, 2008, Rainey was working toward the end of the midnight shift.  (*Id.* at p. 21.)  The production lines in the bakery had been shut down, and the bakery was "very quiet."  (Id. at 24.)  At the time, Rainey was speaking with two union employees, Manning and Russ Renusch.  (R. 12-3, arbitration trans., p. 25.)  Rainey testified that he turned to speak with Renusch when he heard Manning say something.  (*Id.* at 27.)  Believing that Manning was speaking to him, Rainey turned and asked her if she was speaking to him.  (*Id.* at 27-28.)  Pointing to Blackshear, Manning informed Rainey that she was "talking to that big mouth smart ass over there."  (*Id.* at pp. 27-29, Co. Ex. 1.)

Rainey then saw Blackshear come around the corner, duck underneath an assembly line, and aggressively approach Manning.  (*Id.* at pp. 29-30.)  Rainey testified that Blackshear looked "angry, upset."  (*Id.* at 30.)  Blackshear "went all the way up to" Manning and stated "I will knock you the fuck out."  (*Id.* at p. 30-

13

31.)  Rainey separated the two employees.  (*Id.* at 31.)  The separation was not easy, as Blackshear did not immediately follow Rainey's directive.  (*Id.*  at p. 31.)  Prior to separating, Blackshear told Manning to "get stepping" several times.  (*Id.* at pp. 31, 40.)  Rainey stated that Manning looked "scared" during the incident.  (*Id.* at 31.)  Renusch, an employee present during the altercation, stated that the altercation between Blackshear and Manning was like an "Al Pacino and Robert DeNiro" "movie" because of all the yelling and cursing.  (*Id.* at 196-97.)

After separating the two employees, Rainey tried to locate their supervisor, Keller.  (*Id.* at p. 33.)  Keller was not in the bakery, however, so Rainey sent both the two employees home.  (*Id.* at pp. 32-33.)  Neither employee provided an explanation for their conduct at that time.  (*Id.* at pp. 32-33.)  Rainey completed a written statement of the incident.  (*Id.* at pp. 22, 23, 48, Co. Ex. 1.)  He later testified that the written statement was provided to Al Zarella, the Human Resources Manager at the time, and that the statement is true and correct.  (*Id.* at pp. 22-23, Co. Ex. 1.)

## V.    IBC'S HONEST BELIEF THAT BLACKSHEAR VIOLATED THE WORKPLACE VIOLENCE POLICY STEMS FROM ITS FAIR AND IMPARTIAL INVESTIGATION INTO THE BLACKSHEAR/ MANNING INCIDENT.

After sending the two employees home, Rainey met with Zarella.  (R. 12-3, arbitration trans., p.  47.)  Rainey provided his written statement to Zarella and orally told him about the incident and his actions.  (*Id.* at 47; Co. Ex. 1.)

14

Zarella then met with Union representatives, relevant witnesses, Blackshear, and Manning. (*Id.* at p. 49.) On January 31, 2008, Zarella met with Dee Manning. (*Id.* at p. 50, Co. Ex. 3.) Manning informed Zarella that she and Blackshear were arguing. (*Id.* at Co. Ex. 3; R. 12-1, plaintiff's deposition, pp. 27-29.) Manning admitted to telling Blackshear to "shut the fuck up" and further informed Zarella that this statement had caused the argument. (R. 11-3, manning deposition, p. 22; R. 12-3, arbitration trans., Co. Ex. 3.) Manning also admitted to telling Rainey that she was "talking to that big ass mouth over there" when Rainey asked her to whom she was talking. (R. 12-3, arbitration trans., Co. Ex. 3; R. 11-3, manning deposition, p. 22.) Further, Manning admitted that the two employees were "arguing in an inappropriate manner cursing back and forth at each other." (R. 12-3, arbitration trans., Co. Ex. 3.) Manning also did not deny that Blackshear threatened her, stating, "there was so much going on, we were yelling back and forth at each other, don't remember if she said that." (*Id.* at p. 52.) However, Manning did not state that she threatened Blackshear.

Based on Manning's admission of misconduct, IBC suspended Manning for seven days. (*Id.* at pp. 53-54.) IBC did not terminate her because her conduct did not involve a threat of violence. (*Id.*) The Union did not grieve Manning's discipline. (*Id.* at pp. 65.)

Zarella also met with Blackshear.  (*Id.* at pp. 55-56, Co. Ex. 4.)  During her interview, Blackshear claimed for the first time that the incident took place due to Manning's diabetes.  (*Id.* at Co. Ex. 4; R. 12-1, plaintiff's deposition, pp. 57-58, 81.)  Blackshear alleged that she was only trying to help Manning "calm down." (R. 12-3, arbitration trans., pp. 57-58, 121.)   However, during Rainey's initial interaction with the women after their altercation, neither had said anything about Manning's condition.  (*Id.* at pp. 33.)

During her interview, Blackshear admitted to cussing and arguing.  (R. 12-3, arbitration trans., Co. Ex. 4; R. 12-1, plaintiff's deposition, pp. 81, 88.)  She also admitted to approaching Manning but denied it was due to an insult.  (R. 12-3, arbitration trans., Co. Ex. 4; R. 12-1, plaintiff's deposition, pp. 81-82, 85, 87.) Rather, she claimed that she simply needed a dust mop.  (R. 12-3, arbitration trans., Co. Ex. 4; R. 12-1, plaintiff's deposition, p. 85.)  As to the argument, Blackshear admitted that she told Manning to "just shut the fuck up" and to "calm the fuck down."  (R. 12-3, arbitration trans., Co. Ex. 4; R. 12-1, plaintiff's deposition, pp. 85, 88.)   She denied threatening Manning, however.  (R. 12-3, arbitration trans., Co. Ex. 4; R. 12-1, plaintiff's deposition, p. 90.)

Following Blackshear's comments regarding Manning's alleged medical condition, Zarella wanted to interview Manning once more.  (*Id.* at pp. 176-77.) Manning refused to be interviewed, however, stating, "I already gave my statement

16

and that was it." (*Id.*) Thus, Zarella was unable to verify Blackshear's allegations regarding Manning's medical condition.

Ultimately, IBC's investigation revealed several facts upon which it based its decision to terminate: (1) Rainey, a supervisor, witnessed Blackshear aggressively approach and threaten Manning, and he reported that threat (R. 12-3, arbitration trans., p. 30); (2) Renusch witnessed Blackshear and Manning's shouting match (*id.* at pp. 196-97); (3) both Manning and Blackshear admitted to being involved in a shouting and cursing match (*id.* at p. 52); (4) Manning did not deny Blackshear's threat during her interview (*id.* at p. 52); (5) Manning admitted her misconduct was improper (*id.* at pp. 179-180); and (6) neither Manning nor Blackshear ever stated that their altercation was the result of Manning's diabetes until well after date of the incident (*id.* at pp. 33, 57-58, 121). Based on this, Zarella concluded that Blackshear had violated the zero-tolerance Workplace Violence Policy by making a threat against Manning and that she should be discharged. (*Id.* at pp. 66-67.)

Zarella reviewed his decision with Syd Wiley, IBC's Regional Human Resources Director, who is responsible for seven plants including the Columbus Bakery. (*Id.* at pp. 69, 80.) Wiley testified that IBC uniformly applied the Workplace Violence Policy, and that all employees who were found to have

threatened physical violence were discharged.  (*Id.* at pp. 82-83.)  Based on the Zarella's findings, Wiley agreed that Blackshear should be discharged.  (*Id.*)

Blackshear grieved her termination, ultimately resulting in an arbitration. (R. 12-1, plaintiff's deposition, pp. 96, 97; *see generally* R. 12-3, arbitration trans.) The arbitrator made no finding of discrimination, harassment, or retaliation, and he found that IBC's investigation into Blackshear's conduct was "fair." (R. 11-4, arbitration award, 11; R. 3, complaint, ¶ 28.)

## LEGAL ARGUMENT

I.  **THE DISTRICT COURT DID NOT ERR BY NOT APPLYING THE MIXED-MOTIVE STANDARD BECAUSE BLACKSHEAR FAILED TO PROVIDE PROPER NOTICE THAT HER CASE WAS A MIXED-MOTIVE CASE.**

Blackshear devotes much of her brief to explaining why the District Court should have analyzed her claim under the "mixed motive" standard. (Appellant's Brief pp. 1,2,6,7, 9-11.)  She is not entitled to use that standard, however, because she never provided notice that she intended her case to be governed by the "mixed-motive" standard. (*See* R. 3, complaint; R. 12, opposition (Blackshear applying the *McDonnell Douglas* standard in opposition to IBC's motion for summary judgment)); *Hashem-Younes v. Danou Enters., Inc.*, 311 Fed.App'x 777, 779 (6th Cir. 2009) (applying the *McDonnell Douglas/Burdine* framework where the plaintiff failed to raise a mixed-motive claim in her complaint or in her response to the defendants' summary judgment motion . . . and where the record was "utterly silent as to mixed motives").

Accordingly, because the record here is "utterly silent" as to a mixed motive theory, the District Court's failure to analyze her claim under that standard was not an error and this Court should apply the traditional *McDonnell Douglas* standard to Blackshear's claims in this appeal.

## II. THE DISTRICT COURT PROPERLY GRANTED SUMMARY JUDGMENT TO IBC ON BLACKSHEAR'S TITLE VII AND O.R.C. § 4112 CLAIMS.[1]

### A. The District Court Correctly Held That Blackshear's Sexual Harassment Claim Fails Because She Has Not Alleged That She Was Harassed Based on Her Gender.

The District Court correctly held that Blackshear has not alleged a cognizable claim of sexual harassment. Because her appellant brief provides no support for why her claim is cognizable, this Court should affirm the District Court's denial of that claim.

At all times during this case, Blackshear's claims of harassment have focused solely on her allegation that her supervisor, Keller, harassed her because Keller was romantically interested in Blackshear's domestic partner, Dee Manning, and was thus jealous of Blackshear's relationship with Manning. (R. 12-1, plaintiff's deposition, pp. 54-55; R. 12, opposition, p. 13-14.) At the summary judgment stage, IBC argued that sexual orientation is not a protected class under Title VII or O.R.C. § 4112. (R. 11, defendant's msj, p. 11 (citing *Vickers v. Fairfield Med. Ctr.*, 453 F.3d 757, 764-65 (6th Cir. 2006) and *Tenney v. General Elec. Co.*, No. 2001-T-0035, 2002 WL 1305990, *3 (Ohio Ct. App. June 14,

---

[1] As held by this Court, the same standard involved in Title VII claims governs Ohio Revised Code § 4112 claims. *See Koval v. Dow Jones & Co.*, 86 F. App'x 61, 65 (6th Cir. 2004). Therefore, this brief will discuss Blackshear's Title VII and Ohio Rev. Code § 4112 claims together.

2002).) In opposition, Blackshear agreed that sexual orientation is not a protected class and simply argued that Keller's alleged harassment had nothing to do with Blackshear's sexual orientation. (R. 12, opposition, pp. 13-14.) Rather, she simply asserted that her claim was based on her sex. (*Id.*)

> In granting judgment to IBC on this claim, the District Court held:
>
> The flaw in [Blackshear's] logic is that Keller's purported mistreatment of [her] was not because [she] was female but because [Blackshear] was a person who was involved in a relationship with Manning. Mere jealousy of this sort, however distasteful or immature, does not equate to discrimination, harassment, or retaliation based on gender. Rather, the personal animus of Keller against Plaintiff arguably involved here is not actionable.

(R. 20, opinion, p. 9.) This holding should be affirmed.

In her brief, Blackshear provides no reason why her "sexual harassment" claim is cognizable. Instead, she recites the law governing sexual harassment and assumes that her claim is actionable without analysis. To prove actionable sexual harassment, Blackshear would have to prove, *inter* alia, that Keller's harassment of her was "based on her sex." *Gallagher v. C.H. Worldwide, Inc.*, 567 F.3d 263, 270 (6th Cir. 2009). The crux of her claim has not changed and is still that she was harassed by Keller because she was involved in a romantic relationship of which Keller was jealous – not because she was female. As correctly noted by the District Court, such personal dislike or jealousy is not actionable sexual harassment. *See Barnett v. Dep't of Veterans Affairs*, 153 F.3d 338, 342-43 (6th

Cir. 1998) ("Personal conflict does not equate with discriminatory animus"); *Diamond v. U.S. Postal Serv.*, 29 Fed. App'x 207, 212 n. 5 (6th Cir. 2002) (no discrimination based on sex where the plaintiff's claim was founded on personal animus); *Falconer v. Papco, Inc.*, No. 06-247 Erie, 2008 U.S. Dist. LEXIS 46840, at *4-5 (W.D. Pa. June 17, 2008) (finding that jealousy over a discharged employee's relationship is not gender-based discrimination).

Moreover, even if Blackshear's claim were based on her sex and actionable as same-sex harassment, it would still fail.  To prove her claim as same-sex harassment, Blackshear must prove, *inter alia*, that she was "harassed in such sex-specific and derogatory terms by another woman as to make it clear that the harasser is motivated by general hostility to the presence of women in the workplace."  *Oncale v. Sundower Offshore Servs., Inc.*, 523 U.S. 75, 118 S. Ct. 998 (1998).  Given that Blackshear alleges that Keller's treatment of her stemmed from Keller's desire to be romantically involved with Manning, another woman, Blackshear cannot show that Keller was motivated by a "general hostility to the presence of women in the workplace."  Rather, she alleges that Keller was driven by the exact opposite of hostility toward women – attraction.

Accordingly, the District Court properly held that Blackshear's sexual harassment claim failed, and this Court should affirm that holding.

**B.    The District Court Properly Denied Blackshear's Discrimination Claims Because Blackshear Cannot Prove a Prima Facie Case of Discrimination Because She Has No Evidence Regarding IBC's Treatment of Similarly-Situated Employees Outside Her Class.**

Blackshear's gender and race discrimination claims fail because she cannot prove that similarly-situated employees outside of her protected class were treated more favorably than her.  In disposing of Blackshear's discrimination claims, the District Court did not specifically analyze whether she could make out a *prima facie* case of discrimination.  It simply held that, [b]ecause the pretext issue proves dispositive of the . . . discrimination claims, the Court shall assume that Plaintiff has established a *prima facie* case." (R. 20, opinion, p. 11 (emphasis original).)  In analyzing pretext, the District Court held that Blackshear could not prove that similarly-situated individuals outside her protected class were treated more favorably than her.  (R. 20, opinion, p. 12.)  As shown below, this finding provides an additional basis for the District Court's dismissal of her discrimination claims.

To make a *prima facie* case of Title VII discrimination, a plaintiff must prove, *inter alia*, that other, similarly-situated individuals outside of her protected class were treated more favorably.  *See also Wright v. Murray Guard, Inc.*, 455 F.3d 702, 707 (6th Cir. 2006) (outlining a *prima facie* case of race discrimination).  Further, to be similarly-situated, "the plaintiff and [her] proposed comparator must have engaged in acts of comparable seriousness." *Wright v. Murray Guard, Inc.*, 455 F.3d 702, 710 (6th Cir. 2006) (emphasis supplied) (quoting *Clayton v. Meijer*,

23

Inc., 281 F.3d 605, 611 (6th Cir. 2002)). "In assessing the relative seriousness of the employees' acts, a court may consider whether the individuals have dealt with the same supervisor, have been subject to the same standards and have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it." *Wright*, 455 F.3d at 710.

In her brief, Blackshear argues that she can make *prima facie* discrimination claims because: (1) Manning was a "similarly-situated" employee; (2) she identified "at least four" other similarly-situated employees at her deposition; and (3) one of her probable cause determinations found yet more similarly-situated employees. (Appellant Brief 14.) This argument is meritless.

First, Manning and Blackshear are not similarly-situated because Manning was not determined to have violated IBC's Workplace Violence Policy, as no one ever reported that Manning threatened Blackshear. (*Id.* at 12); *see Ladd v. Grand Trunk Western R.R.*, 552 F.3d 495, 503 (6th Cir. 2008) (holding that two parties were not similarly situated because they had violated different rules, so the court could not "adjudicate the intent of the employer" based on the comparison); *Williams v. PVACC, LLC*, No. 09-3168, 2010 U.S. App. LEXIS 5461, at *11-13 (6th Cir. March 15, 2010) (an employee is not similarly situated when that employee violates a rule different from that which the plaintiff violated).

24

Second, it is true that Blackshear named four individuals at her deposition whom she believed to have also violated the Workplace Violence Policy. However, she offered no admissible evidence that these alleged incidents happened or, more importantly, that they were ever brought to IBC management's attention or witnessed by a supervisory employee, as was her misconduct. Because Blackshear's "conclusory allegations and subjective beliefs are not a sufficient basis to deny summary judgment," these individuals were properly rejected as comparators. *Johnson v. Interstate Brands Corp.*, 351 Fed. App'x. 36 (6th Cir. 2009).

Third, as to the similarly-situated individuals detailed in Blackshear's probable cause determinations, the probable cause determinations have no evidentiary value and cannot create an issue of fact, as detailed in Subsection E, *infra*. They were thus properly disregarded by the District Court.

In contrast to Blackshear's conjecture, IBC offered the testimony of Syd Wiley, its Regional HR Director, who testified that all employees who were objectively found to have violated the Workplace Violence Policy were discharged. (R. 12-3, arbitration trans., pp. 82-83.) Blackshear has failed to contradict this evidence.

Accordingly, Blackshear's discrimination claims fail because she has not entered evidence that similarly-situated employees outside her protected class were treated more favorably.

### C.     Blackshear's Gender and Race Retaliation Claims Fail Because She Cannot Show a Causal Connection Between the Exercise of Her Statutorily-Protected Rights and Her Termination.

In its opinion granting summary judgment to IBC, the District Court ruled that Blackshear's sex and gender retaliation claims failed solely because IBC had a legitimate, non-retaliatory reason for her termination that Blackshear could not prove was pretextual. Additionally, this claim also fails because Blackshear failed to enter evidence of a causal link between her statutorily-protected activity and her discharge.

A plaintiff alleging retaliatory discharge based on either race or gender must prove the following: (1) that she was engaged in a protected activity; (2) that she was the subject of adverse employment action; and (3) that a causal link existed between the protected activity and the adverse action. *Jackson v. RKO Bottlers of Toledo, Inc.*, 743 F.2d 370, 375 (6th Cir. 1984). As to prong three, temporal proximity alone, unless <u>very close</u> in time, is insufficient to support an inference of causal connection sufficient to establish a claim of retaliation. *See Lindsay v. Yates*, 578 F.3d 407, 418 (6th Cir. 2009). Generally, the Sixth Circuit "has . . . found the causal connection element satisfied only where the adverse employment

action occurred within a matter of months, or less, of the protected activity." *Dixon v. Gonzales*, 481 F.3d 324, 334 (6th Cir. 2007); *Compare Cooper v. City of North Olmstead*, 795 F.2d 1265, 1272 (6th Cir. 1986).

Blackshear alleges in her brief that a causal link exists because she filed an OCRC charge of discrimination in February 2008, regarding the length of her suspension vis-à-vis Manning's, and was terminated approximately one month later. However, Blackshear's analysis ignores the numerous other complaints she made regarding what she perceived as discrimination while employed at IBC. She first complained to IBC management in June 2006, nearly two years before her termination. In total, she alleges that she complained <u>over 10 times</u> – in the form of internal complaints, state administrative complaints, and grievances.

With nearly two years' worth of complaints regarding a wide variety of alleged discrimination, Blackshear cannot establish that her February 2008 OCRC charge was the reason of her discharge. She may not simply cherry pick a particular exercise of her rights and ignore her nearly-two-year track record of complaints without any retaliation by IBC in support of her claim.

The February 2008 charge, alone, does not provide evidence of a causal link, and Blackshear's retaliation claim fails and was thus properly dismissed by the District Court.

**D.    The District Court Properly Dismissed Blackshear's Discrimination and Retaliation Claims Because She Failed to Enter Evidence of Pretext Sufficient to Overcome IBC's Legitimate, Non-Discriminatory/Retaliatory Reason for Her Termination.**

At the summary judgment stage, the District Court found that Blackshear could not prove pretext sufficient to overcome IBC's legitimate, non-discriminatory/retaliatory reason for terminating her and granted summary judgment to IBC on both claims. Blackshear now claims that the District Court erred because (1) she did not in fact violate the Workplace Violence Policy and (2) because other, similarly-situated employees outside of her protected class also violated the Workplace Violence Policy without being discharged.[2] Her claims are meritless.

Both Title VII retaliation and discrimination claims are evaluated under the *McDonnell-Douglass* standard. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973) (discrimination); *Gribcheck v. Runyon*, 245 F.3d 547, 550 (6th Cir. 2001) (retaliation). Pursuant to *McDonnell-Douglass*, once a plaintiff has made a *prima facie* showing, the burden production shifts back to the defendant to put forth a legitimate, non-discriminatory/retaliatory reason for the adverse action taken against the plaintiff. *McDonnell*, 411 U.S. at 802-03. If the defendant makes

---

[2]  Blackshear concedes that IBC had a legitimate, non-discriminatory/retaliatory reason for her discharge in its honest belief that she violated its Workplace Violence Policy by failing to challenge it.

such a showing, the burden then shifts back to the plaintiff to prove that the proffered reason was mere pretext for unlawful discrimination.  *Sutherland v. Mich. Dep't of Treasury*, 344 F.3d 603, 615 (6th Cir. 2003).

Under this framework, a plaintiff can show pretext by proving: (1) that the proffered reasons had no basis in fact; (2) that the proffered reasons did not actually motivate the employer's action; or (3) that the proffered reasons were insufficient to motivate the employer's action.  *Hedrick v. W. Reserve Care Sys.*, 355 F.3d 444, 460 (6th Cir. 2004).  But a plaintiff may not simply rest on the evidence supporting her *prima facie* case to prove pretext.  *See, e.g., Blakann v. Roadway Exp., Inc.* (6th Cir. 2005), 159 Fed. App'x 704 (citing *Manzer v. Diamond Shamrock Chemicals Co.* (6th Cir. 1994), 29 F.3d 1078, 1084-85)).

In the underlying matter, the District Court held that Blackshear could not prove pretext because:  (1) she produced no evidence to contradict IBC's honest belief that she violated its Workplace Violence Policy; and (2) she failed to enter evidence that similarly-situated employees outside her protected class violated the Workplace Violence Policy but were not terminated.  (R. 20, opinion, p. 11-12.)

Blackshear now argues that IBC's proffered reason is pretext because: 1) she did not threaten Manning and thus did not violate the workplace violence policy (Appellant Brief p. 16); and 2) that other, similarly-situated employees outside her protected class also violated the Workplace Violence Policy but were not

terminated.  (*Id.* at 15-16.)  The District Court properly found that both of these arguments fail, as should this Court.

As to whether Blackshear actually violated IBC's workplace violence policy, the District Court correctly held that, regardless of whether she did or not, IBC honestly believed that she did.  (R. 20, opinion, 11-12.)  In this Circuit, when a plaintiff seeks to prove that an employer's professed reason for his/her termination had no basis in fact, the honest-belief rule applies.  *Braithwaite v. Timken Co.*, 258 F.3d 488, 493-94 (6th Cir. 2001).  Pursuant to this rule, "if the employer had an honest belief in the proffered basis for the adverse employment action, and that belief arose from reasonable reliance on the particularized facts before the employer when it made the decision, the asserted reason will not be deemed pretextual even if it was erroneous."  *Upshaw v. Ford Motor Co.*, 576 F. 3d 576, 586 (6th Cir. 2009).  To rebut the employer's honest belief, a plaintiff must prove that the belief was not honestly held.  *Clay v. UPS*, 501 F.3d 695 (6th Cir. 2007).

As properly noted by the District Court, "[t]here is no material dispute . . . over whether [IBC] made a reasonably informed and considered decision that demonstrates an honest belief in the proffered reason for the treatment [Blackshear] received."  (R. 20, opinion, p. 12.)  This holding was based on substantial evidence.  The individual at IBC that investigated the

30

Blackshear/Manning incident, "Zarella[,] credited the threat [only] after investigating the matter" thoroughly. (*Id.* at p. 12.) Zarella's investigation began because Rainey, a 25-year IBC employee and supervisor at the time of Blackshear's termination, <u>witnessed</u> Blackshear threaten Manning and reported it. Rainey also testified that Blackshear aggressively approached Manning, looking angry and upset and that Manning looked "scared" during the altercation. Further, during his interview with Manning, Manning did not initially deny that Blackshear threatened her and then refused a further interview when Zarella had additional questions for her.   During his interview with Blackshear, Blackshear freely admitted to approaching and cursing at Manning.  Based on Zarella's investigation, Syd "Wiley . . . concluded . . . that Plaintiff had engaged in . . . distinguishable behavior [from Manning] violative of company policy."  (R. 20, opinion, p. 12.) Even the arbitrator found IBC's investigation fair and adequate, stating that "the employer could reasonably conclude that . . . serious discipline was appropriate." (R. 12-4, arbitration award, p. 11.)   Finally, Keller, the subject of most of Blackshear's allegations, <u>was not at all involved in the decision to discharge Blackshear</u>.  In response to this litany of evidence, Blackshear offers nothing in contradiction.  In failing to contest IBC's hones belief, Blackshear fails to contest the District Court's pretext analysis.

As to IBC's treatment of similarly-situated employees outside Blackshear's protected class, as demonstrated in Subsection E, *infra*, Blackshear failed to enter any evidence of such similarly-situated employees outside her protected class. She thus cannot prove pretext in this manner.

Because Blackshear cannot prove pretext, the District Court properly granted summary judgment to IBC on her discrimination and retaliation claims.

### E.    The District Court Correctly Disregarded the OCRC Probable Cause Determinations.

On appeal, Blackshear argues that two probable cause determinations she received from the OCRC regarding her claims created a genuine issue of material fact as to her discrimination and retaliation claims and the District Court thus committed an error in disregarding those determinations. As demonstrated below, those determinations have no evidentiary value, and the District Court properly disregarded them.

While administrative probable cause determinations may be admissible for summary judgment purposes, this Court has described the evidentiary value of those determinations as nearly zero. *E.E.O.C. v. Ford Motor Co.*, 989 F.3d 1341 (Table) (6th Cir. 1996). Further, district courts are not bound by such determinations and are free to disregard them when they provide no evidentiary value. *Id.*

Here, the District Court appropriately disregarded Blackshear's OCRC Probable Cause Determinations. In COL 71 (35449) 02112008, the OCRC determined that it was probable that IBC discriminated against Blackshear when it discharged her for violation of its Workplace Violence Policy but did not discharge Manning and other employees for similar conduct. (R. 12-5, exhibit, p. 18.) First, the District Court made its own determination that Manning was not similarly situated to Blackshear based on IBC's honest belief that Blackshear threatened Manning. Because the District Court is not bound to follow the probable cause determination and because its analysis was legally correct, its disregard of that determination in favor of its own analysis was not an error. Second, the OCRC determination also provides no analysis or supporting evidence as to who these "other" employees were and if they were similarly-situated or outside of Blackshear's protected class. Absent such evidence, the OCRC's conclusory statement that similarly-situated individuals existed is worthless. This determination is of no evidentiary value and was thus properly disregarded by the District Court.

The other determination, COL 71 (35797) 06042008, finds it probable that IBC retaliated against Blackshear for her numerous civil rights complaints by asking her to sign a Last Chance Agreement when it did not force other, "comparable" employees to do so. (R. 12-5, exhibit, p. 13.) Again, the

determination simply asserts that these employees were Blackshear's "comparables" without any supporting evidence or analysis. Without evidence as to why these individuals were similarly situated and outside of Plaintiff's protected class, this determination provides no support to Blackshear's claims. Further, as shown in Section D, *supra*, Blackshear cannot prove a *prima facie* claim of retaliation, which provides another reason for the disregarding this determination. Accordingly, the District Court was therefore correct to disregard this determination.

## III.  THE DISTRICT COURT PROPERLY GRANTED SUMMARY JUDGMENT ON BLACKSHEAR'S INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS CLAIM.

The District Court's dismissal of Blackshear's intentional infliction of emotional distress ("IIED") claim was proper. As grounds for its decision, the District Court stated, "terminating an individual for violation of a workplace violence policy under the circumstances presented here . . . does not constitute outrageous behavior even if it is likely to induce stress on the discharged." (R. 20, opinion, p. 17.)

To establish a claim for IIED, a plaintiff must prove that the defendant's conduct was "so extreme and outrageous" as to go "beyond all possible bounds of decency" and was such that it can be considered "utterly intolerable in a civilized community," and that as a consequence of that conduct the plaintiff suffered severe

and debilitating mental anguish. *Yeager v. Local Union 20*, 6 Ohio St.3d 369, 374-75, 453 N.E.2d 666 (1983). The "outrageousness" determination is a question of law for the court to decide. *Crawford v. ITT Consumer Fin. Corp.*, 653 F.Supp. 1184, 1192 (S.D. Ohio 1986).

This Court and Ohio courts have repeatedly held that violations of anti-discrimination laws do not, by themselves, support an IIED claim. *Fuelling v. New Vision Med. Labs., LLC,* 284 Fed. App'x 247, 261 (6th Cir. 2008); *see also Mowery v. City of Columbus*, No. 05AP-266, 2006 WL 620902, at *14 (Ohio Ct. App. 2006). As in the above-stated analysis, the allegations asserted in this case do not rise to the level of actionable discrimination or harassment, let alone extreme and outrageous conduct. Therefore, the District Court correctly held that this claim fails.

Similarly, Blackshear cannot prove that she suffered from severe and debilitating mental anguish of a nature that "no reasonable man could be expected to endure it." *Brewer v. Cleveland City Schools*, 122 Ohio App.3d 378, 386 (Ohio Ct. App. 1997). Specifically, she stated that from the time of her discharge to the date of her deposition, she has been medically able to work and has sought employment since her discharge. (R. 12-1, plaintiff's deposition, p. 14, Ex. 7.) And, while Blackshear did state that she is being treated by a psychiatric professional for stress and depression, that treatment began before Keller became

35

her supervisor and years before her discharge.  (*Id.* at 20-22.)  While Blackshear may have psychiatric or psychological issues, she lacks evidence that they are caused by IBC's conduct.  Blackshear has adduced no evidence capable of sustaining an IIED, and summary judgment in IBC favor on this claim was appropriate.

Finally, the District Court's finding that IBC honestly believed that Blackshear violated its Workplace Violence Policy forecloses Blackshear's IIED claim as a matter of law.  Specifically, because IBC reasonably relied on a particularized set of facts in determining to discharge Blackshear, it could not have acted intentionally to cause Blackshear debilitating mental anguish that is utterly intolerable in a civilized community.  *See Fuelling*, 284 Fed. App'x at 261 (finding plaintiff's IIED claim failed where an employer had an honest belief regarding the reasons for the plaintiff's termination).

Accordingly, the District Court's dismissal of Blackshear's IIED claim was not an error and should be affirmed by this Court.

## **CONCLUSION**

Because the District Court properly dismissed all Blackshear's claims at the summary judgment stage, this Court should affirm the District Court's grant of summary judgment to IBC and dismiss Blackshear's appeal in its entirety.

Respectfully submitted,

/s/ *David A. Campbell*
David A. Campbell  (0066494)
Daniel J. Clark  (0075125)
VORYS, SATER, SEYMOUR AND
PEASE LLP
52 East Gay Street
P.O. Box 1008
Columbus, Ohio  43216-1008
(614) 464-6436
(614) 719-4650
Email:  dacampbell@vorys.com
           djclark@vorys.com

*Attorneys for Appellee*
*Interstate Brands Corp.*

## <u>CERTIFICATE OF COMPLIANCE WITH RULE 32(a)</u>

Pursuant to Fed. R. App. P. 32(a)(7)(C) and Sixth Cir. R. 32(a), the undersigned certifies that this brief complies with the type-volume limitations of Fed. R. App. P. 32(a)(7)(B) because this brief contains 6.664 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in proportionally spaced typeface using Microsoft Word 2010 in Times New Roman, 14 point.

*/s/ David A. Campbell*
David A. Campbell

# ADDENDUM

| Docket Entry | Description | Date Filed |
|---|---|---|
| 2 | NOTICE OF REMOVAL | 01/06/2009 |
| 3 | COMPLAINT WITH JURY DEMAND | 01/06/2009 |
| 11 | MOTION FOR SUMMARY JUDGMENT by Defendant Interstate Brands Corp. (Attachments: # 1 Exhibit Relevant Portions of Venus Blackshear's Deposition, # 2 Exhibit Relevant Portions of Arbitration Transcript, #3 Exhibit Relevant Portions of Deidre Manning's Deposition, # 4 Exhibit Arbitration Award) | 01/08/2010 |
| 12 | RESPONSE IN OPPOSITION MOTION for Summary Judgment (Attachments: # 1 Exhibit Blackshear deposition, # 2 Exhibit Settlement agreement, # 3 Exhibit Arbitration transcript, # 4 Exhibit Manning deposition, # 5 Exhibit Attorney Declaration and Attachments) | 01/25/2010 |
| 20 | ORDER granting Defendant's Motion for Summary Judgment and denying as moot 18 Defendant's Motion to Strike | 05/21/2010 |
| 21 | JUDGMENT entered pursuant to the Opinion and Order | 05/21/2010 |
| 24 | NOTICE OF APPEAL | 06/08/2010 |

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the 4th day of October, 2010, a copy of the foregoing

*Appellee Brief of Interstate Brands Corp.* was filed electronically.  Notice of this

filing will be sent to all parties by operation of the Court's electronic filing system.

Parties may access this filing through the Court's system.

*/s/ David A. Campbell*
David A. Campbell
